No. 1,069.

## Jaqua v. Shewalter.

PLEADING.—*Complaint.*—*Money Demand.*—*"Due" and "Unpaid."*—In an action on a money demand, upon contract, the complaint is insufficient which does not allege, either directly or indirectly, that the debt for which the suit was brought is due and unpaid, and there are no facts averred from which the facts of due and unpaid can be inferred.

SAME.—*Complaint.*—*Account.*—*"Dr.," Force and Meaning of.*—*"Due" and "Unpaid."*—The abbreviation, "Dr.," as used in the heading of an account, to wit, "Alonzo L. Jaqua to Shewalter, Hanlin & Co. Dr.," does not indicate an indebtedness matured or due and unpaid, but simply indicates that Jaqua owes Shewalter, Hanlin & Co. the various items of account.

WAIVER.—*Nature of.*—*Estoppel.*—*Contract.*—*Consideration.*—A waiver works by way of estoppel rather than by way of contract, and requires no consideration to support it. So, where one by his conduct throws another off his guard, the former will be estopped from obtaining an unfair advantage of the latter by reason of such conduct.

SAME.—*Release.*—*Estoppel.*—A written instrument purporting to be a release may, even though it be insufficient as a release, amount to a waiver, and estop the releaser from asserting certain rights against the releasee.

From the Randolph Circuit Court.

*P. Gray*, for appellant.

*J. J. M. LaFollette*, and *O. H. Adair*, for appellee.

Lotz, J.—The appellee brought this action against the appellant.

His complaint is in these words, omitting the formal parts:

"The plaintiff complains of the defendants and says, that heretofore, to wit, on the —— day of January, 1887, the plaintiff and the defendants John T. Hanlin and Clark H. Croninger were partners doing business in the name and style of Shewalter, Hanlin & Co., and, as such firm, they sold and delivered to said defendant Alonzo L. Jaqua certain goods, wares, and merchandise, of the value of four thousand dollars; a bill of particulars of which is filed herewith and made a part hereof; that said firm of Shewalter, Hanlin & Co. has been dissolved, and their partnership accounts settled between them; that by the terms of said settlement the account in favor of said firm became, and now is, the separate property of this plaintiff.    And said Hanlin and Croninger are made parties defendant to answer as to their interest in said account. Wherefore plaintiff demands judgment against the defendant Jaqua for four thousand dollars and other proper relief."

The bill of particulars filed with the complaint was entitled thus:   "Alonzo L. Jaqua.    To Shewalter, Hanlin & Co.    Dr."    Then follows the items of the account with date of sale.    Hanlin made default.

The record is silent as to whether or not Croninger was served with process.    Jaqua appeared and filed a demurrer to the complaint for want of facts.    This demurrer was overruled and he excepted to the ruling of the court.    Issues were joined and there was a trial by jury, and a verdict and judgment against the appellant Jaqua alone.

The overruling of the demurrer to the complaint is one of the errors assigned in this court.

Appellant's counsel contends that the complaint is insufficient to withstand the demurrer, because it is nowhere alleged therein that the indebtedness is due and unpaid.   This contention is well founded.   It has been repeatedly decided in this State that in an action for a money demand upon a contract, express or implied, the complaint must show, in some manner, that the debt, or some part thereof, is due and unpaid.   *Riley* v. *Walker,* 6 Ind. App. 622; *Johnson* v. *Tyler,* 1 Ind. App. 387; *Goodman* v. *Gordon,* 87 Ind. 126; *Pace* v. *Grove,* 26 Ind. 26; *Howorth* v. *Scarce,* 29 Ind. 278; *Seldonridge* v. *Connable,* 32 Ind. 375; *Green* v. *Louthain,* 49 Ind. 139; *Lawson* v. *Sherra,* 21 Ind. 363; *Michael* v. *Thomas,* 27 Ind. 501.

There is no averment, either directly or indirectly, that the debt or claim for which the suit was brought, is due or unpaid, and none from which such facts can be inferred.   We are not favored by a brief from the appellee, and we are not informed upon what theory the complaint was held good in the court below.   We presume the court's attention was not called to any defect in the complaint, and that the demurrer was overruled *pro forma.*  In view of the numerous adjudications upon this point, we feel constrained to hold the complaint insufficient.

Judgment reversed, at costs of appellee, with instructions to sustain the demurrer to the complaint.

Filed Dec. 21, 1893.

## On Petition for a Rehearing.

Lotz, C. J.—When this cause was considered, on a former occasion, the appellee was not represented by counsel.   Since then the appellee has filed a petition for a rehearing on the question decided, and both the appellee and the appellant unite in requesting the court to de-

cide another question, which will arise in the event of another trial.

The appellee asserts that the court was mistaken in the former opinion, holding the complaint insufficient. It is settled beyond controversy that a complaint for a money demand, on contract, must show that the debt, or some part of it, was a matured indebtedness at the time the action was instituted. If a complaint allege that a debt is due, this is sufficient, for the word "due" indicates maturity. *Downey* v. *Whittenberger*, 60 Ind. 188.

Whenever a debt is due, there exists a present matured indebtedness. Accordingly it has been repeatedly decided that a complaint which avers that the defendant is indebted to the plaintiff is sufficient as implying a present matured indebtedness; that is, one due and unpaid. *Johnson* v. *Kilgore*, 39 Ind. 147; *Mayes* v. *Goldsmith*, 58 Ind. 94; *Heshion* v. *Julian*, 82 Ind. 576; *Hartlep* v. *Cole*, 94 Ind. 513; *Pittsburgh, etc., R. W. Co.* v. *Thornburgh*, 98 Ind. 201; *Jaqua* v. *Cordesman, etc., Co.*, 106 Ind. 141.

In the body of the complaint before us there is no such term as "indebted," or its equivalent, nor is there anything whatever to indicate that the claim is a matured one; that is, one due and unpaid. There is, however, with the accompanying bill of particulars this heading: "Alonzo L. Jaqua to Shewalter, Hanlin & Co. Dr." If the complaint can be upheld at all, it must be on account of this heading, taken in connection with the other averments of the complaint.

In construing pleadings, written instruments and accounts which the statute requires to be filed therewith, may be looked to, and, in some instances, they are controlling. *Blount* v. *Rick*, 107 Ind. 238.

The bill of particulars filed with the complaint is intended to exhibit the condition of the account, and to apprise the defendant of the various claims which he is

required to meet. The abbreviations "Cr." and "Dr.," when used in bookkeeping, mean to enter upon the credit and debit side of the account respectively. They are generally used as adjectives descriptive of the side of the account. They may also be used as nouns, the first as designating the person to whom an obligation accrues, and the latter the person on whom the obligation rests, as creditor and debtor; and they may be used as verbs to designate the act of crediting or debiting an item on an account. But in none of these senses are they used to denote a present matured indebtedness. A debtor is one who owes a debt, the debt may or may not be due. When an item of account is debited, it may or may not be due; and when we speak of the debit side of an account, the items may or may not be due.

When a statement of account is made out using the term "Dr.," without more, it simply indicates that the person owes the various items. It does not indicate a matured indebtedness. The usual and ordinary method of keeping books of account is to enter the items chargeable as they are made, although they may not be due or may not mature until a future time.

So the abbreviation Dr., as used in the heading, does not indicate an indebtedness matured or due and unpaid. Construing the pleading in connection with the exhibit, it does no more than indicate that the defendant owes Shewalter, Hanlin & Co. the various items of the account.

It has been expressly decided that a complaint in the circuit court which charges that the defendant owes the plaintiff the price of an article sold, does not show that the debt is due, and is insufficient on demurrer. *Musselman* v. *Wise*, 84 Ind. 248 (250).

We do not overlook the case of *Milholland* v. *Pence*, 11 Ind. 203, which holds that a bare statement of ac-

count is a sufficient complaint. But that was an action before a justice of the peace. The rules of pleading which maintain in a justice's court do not prevail in the circuit court. Surely it will not be contended that filing the exhibit alone would constitute a sufficient complaint in the circuit court. Nor will it be contended that the complaint, without the account, is sufficient. The bill of particulars does not make the complaint one whit stronger so far as showing a matured indebtedness is concerned. The evidence is not in the record, and we are, therefore, unable to determine whether or not the ruling on the demurrer was harmless. Under such circumstances it will be deemed hurtful.

The appellant contends that the exhibit is not properly a part of the complaint, relying upon *Rogers* v. *State, ex rel.,* 78 Ind. 329, and *Peoria, etc., Fire Ins. Co.* v. *Walser,* 22 Ind. 73 (81); but it is sufficiently identified within the rule laid down in *Northwestern, etc., Life Ins. Co.* v. *Hazelett,* 105 Ind. 212.

The next assignment of error is the overruling of the demurrer to the second paragraph of reply.

The second paragraph of reply was addressed to the third paragraph of the answer. This paragraph of answer was pleaded as a set-off. It alleges, in brief, that in the year 1887, the defendant purchased of the plaintiff an interest in certain real estate in Jay county, on which was situate a heading, slack barrel, and stave factory; that as a part of the consideration for such purchase, the plaintiff executed a written contract and bond, whereby he promised and agreed with the defendant that he would not engage in the heading, slack barrel, and stave business, either directly or indirectly, in Jay county, Indiana, for the term of two years from the date thereof; that if he should violate said agreement within said time he would forfeit and pay to the defendant the sum of

$1,000 as liquidated damages, collectible without relief; that the plaintiff violated said agreement within said time, by engaging in the heading, slack barrel, and stave business in said county with one Silas H. Adams.

The second paragraph of reply admits the execution of the bond set out in the answer, and it also admits that the appellee did engage in the business of manufacturing slack barrels and staves in Jay county as a partner with one Silas H. Adams, as alleged in the answer. But it is further alleged that when said Adams requested appellee to engage in said business he declined to do so on account of said bond; that thereupon said Adams undertook to procure from appellant his consent for the appellee to engage in said business, and a release from the obligation of said bond, and for that purpose arranged with appellant to have a release of said bond to the extent that appellee might form a partnership with said Adams and engage in said business, but not otherwise, which the appellant agreed to do on condition that the expense of writing, or having such release written, should be borne by the appellee or said Adams for him. "And they thereupon procured a lawyer to draw up a release, which was done, and the said Jaqua signed the same, and paid the same, and paid the attorney the sum of five dollars for said Jaqua for writing of said release, and carried the same to the said Shewalter, who, acting upon the same and because the same was given and signed by said Jaqua, did engage with said Adams in said business and not otherwise."

A copy of this last instrument is filed with, and made a part of, the paragraph.

This instrument contains this condition: "At the request of the said James A. Shewalter, I hereby consent that he may engage in the business named in the above bond, in Jay county, Indiana, from this date as partner

with Silas H. Adams, of the city of Portland, Jay county, Indiana, but not otherwise; but reserving to myself all my legal rights under said bond up to this date as against the said Shewalter and do not release, nor intend hereby to release, him, the said Shewalter, from any liability or from the payment of the amount named in said bond for any breach or violation of any of the conditions or stipulations of said bond or from any legal right of action that may have accrued to me up to this date by reason of any violation or breach, by said Shewalter, of any of the conditions of said bond. As to all and every breach of the conditions of said bond, by said Shewalter up to and prior to the date of this instrument, the legal rights of said Shewalter and myself by reason thereof shall be and remain as though this instrument had not been executed by me. This instrument is made and executed by me in duplicate, without any consideration whatever, either good or valuable.''

The appellant contends that the theory of this reply is that of a release from the obligation of the bond, in so far as to permit the appellee to engage in the slack barrel business with Adams; that the terms of the instrument show that it was executed ''without any consideration whatever, either good or valuable,'' and that said instrument is therefore void, and did not confer any rights upon the appellee. The appellee insists that he is not bound by the recitation in the contract that it was executed without consideration, but that the true consideration of the contract may always be shown, and that there was in fact a consideration for the release, to wit, the payment of the attorney's fee.

A release is the act or writing by which some claim or interest is surrendered to another person. And. Law Dic. It is a species of contract, and like any other contract, it

must have a consideration to support it. *Fitzgerald* v. *Smith*, 1 Ind. 310; *Carter* v. *Zenblin*, 68 Ind. 436; *Harris* v. *Boone*, 69 Ind. 300. The general rule is that when a contract is reduced to writing, the writing becomes the repository of the entire contract, and the undertaking and agreement of the parties must be ascertained from the instrument and measured by its terms. It takes up and retains the whole and every part of the contract, leaving nothing to be supplied by extrinsic evidence except in cases where mistakes and fraud are alleged. *Conant* v. *National, etc., Bank*, 121 Ind. 323. There is an exception to this rule in so far as the consideration of the contract is concerned.

The language descriptive of the consideration is generally used by way of recital, and is not contractual. Hence, the rule that the true consideration may be shown by parol without altering or varying the legal effect of the instrument. But there are well defined limitations upon this rule. Where a stipulation with reference to the consideration, by the terms of the instrument, becomes contractual, then the ordinary rules with reference to contracts apply, and the consideration expressed can no more be varied by parol than any other portions of the written contract. The terms of the instrument relating to the consideration in such instances are not used merely as a matter of recital; but they are introduced for the purpose of defining and limiting the consideration, and are contractual in their character. *Pickett* v. *Green*, 120 Ind. 584. The appellant insists that the stipulation in this contract relating to the consideration is contractual, and that the reply seeks to vary the terms of the written instrument by parol, in that it attempts to show that there was a consideration in contradiction of the express stipulation that there was none. The conclusion hereafter reached renders it

unnecessary for us to determine whether or not this stipulation is contractual or whether there was any consideration for the execution of the instrument.

An obligation may be extinguished in many ways. It is well settled that when the obligee delivers up the obligation which he holds against another party with the intent and for the purpose of discharging the debt, such surrender operates as an extinguishment of the obligation. Nor is any consideration required to support such transaction. *Larkin* v. *Hardenbrook*, 90 N. Y. 333. And the delivery of a bond to the obligor or a third person, for the purpose and direction that it be canceled, will extinguish the obligation. *Albert* v. *Ziegler*, 29 Pa. St. 50; *Vanderbeck* v. *Vanderbeck*, 30 N. J. Eq. 265; *Beach* v. *Endress*, 51 Barb. 570. But there was no surrendering up of the obligation in this case. According to the theory of the pleader there was an attempt to release the appellee on his obligation in one particular only. It is also true that the obligee or holder of a written instrument may waive his right to insist upon a performance, or in other words he may estop himself from insisting upon the terms of the contract. The contract set out in the answer is not an unconditional promise to pay a definite sum of money. It is a promise to pay on condition. Unless the condition be broken, no obligation to pay could ever arise. The obligee might waive the breach of the condition, either in whole or in part, and, by so doing, he would also waive his right to enforce the penalty.

The principles of equitable estoppel will not permit a party to throw another off his guard and thus obtain an unfair advantage. The controlling principle of equitable estoppel is to prevent fraud and promote justice. A waiver works by way of estoppel rather than by way of contract, and an estoppel requires no consideration to sup-

port it.   Ordinarily one simply shows that he has been misled by the conduct of another, and stands upon the estoppel.   No consideration need be alleged or proved. Bishop Cont., sections 283 and 792.

It is insisted, however, that the reply does not proceed upon the theory of estoppel, but that of a release.   The facts are all set out, and it is possible to construe it upon two different theories.   Under such circumstances this court will adopt the theory of the trial court.   There was no error in overruling the demurrer to it.

Petition overruled.

